**This Declaration Page is attached to and forms part of Certificate provisions.**

Previous Account No. 474258                                    Account No. 566931

| | |
|---|---|
| Certain Underwriters at Lloyd's, London | Certificate No. AMR-53460-03 |
| Indian Harbor Insurance Company | Policy No. AMP7528631-03 |
| QBE Specialty Insurance Company | Policy No. MSP-20579-03 |
| Steadfast Insurance Company | Policy No. CPP0167060-03 |
| General Security Indemnity Company of Arizona | Policy No. 10T029659-05161-18-03 |
| United Specialty Insurance Company | Policy No. USI-16229-03 |
| Lexington Insurance Company | Policy No. N/A |
| Safety Specialty Insurance Company | Policy No. SSI-11948-00 |
| International Insurance Company of Hannover SE | Policy No. HAN-15130-03 |
| Old Republic Union Insurance Company | Policy No. ORAMPR001720-01 |

| Name and address of the Insured | Producer |
|---|---|
| Upper Pontalba of Old Metairie | All Risks Limited |
| Condominium Association | 318 S US Highway 1, Ste 206 |
| 800 Rue Rampart | Jupiter, FL 33477 |
| Metairie, LA 70005 | |

Effective From          05/30/2018          to          05/30/2019          ;

Both days at 12:01 a.m. standard time at the Insured's mailing address.

Insurance is effective with: Insurer(s) as stated on Form AR CA - Contract Allocation Endorsement

**This Policy consists of the following coverage parts for which a premium is indicated -
This premium may be subject to adjustment.**

COMMERCIAL PROPERTY COVERAGE PART                                    Premium

| | | | |
|---|---|---|---|
| Certain Underwriters at Lloyd's, London | Property | $ | 28,299 |
| One Lime Street, London EC3M 7HA<br>c/o Thompson Heath and Bond Limited, 107 Leadenhall Street, London EC3A 4AF | TRIA | $ | 0 |
| Indian Harbor Insurance Company | Property | $ | 9,103 |
| 505 Eagleview Blvd., Ste. 100; Dept: Regulatory<br>Exton, PA 19341-1120 | TRIA | $ | 0 |
| QBE Specialty Insurance Company | Property | $ | 30,722 |
| 88 Pine Street, 16th Floor, Wall Street Plaza<br>New York, NY 10005 | TRIA | $ | 0 |
| Steadfast Insurance Company | Property | $ | 18,205 |
| 1299 Zurich Way<br>Schaumburg, IL 60196 | TRIA | $ | 0 |
| General Security Indemnity Company of Arizona | Property | $ | 9,103 |
| One Seaport Plaza, 199 Water Street<br>New York, NY 10038-3526 | TRIA | $ | 0 |
| United Specialty Insurance Company | Property | $ | 9,103 |
| 1900 L. Don Dodson Drive<br>Bedford, TX 76021 | TRIA | $ | 0 |
| Lexington Insurance Company | Property | $ | 0 |
| 99 High Street<br>Boston, MA 02110 | TRIA | $ | 0 |
| Safety Specialty Insurance Company | Property | $ | 6,827 |
| 1832 Schuetz Road<br>St. Louis, MO 63146 | TRIA | $ | 0 |
| International Insurance Company of Hannover SE | Property | $ | 4,551 |
| Roderbruchstrasse 26, 30655 Hannover, Germany<br>Attn: Ralph Beutler | TRIA | $ | 0 |
| Old Republic Union Insurance Company | Property | $ | 4,551 |
| 370 North Michigan Avenue<br>Chicago, IL 60601 | TRIA | $ | 0 |
| Inspection Fee | | $ | 0 |
| **Total** | | $ | 120,464 |

Minimum Earned Premium = $     42,162

Dated _____06/12/18_____   by  _____

Correspondent and/or Program Manager for the Company(ies)
AmRisc, LLC, 20405 SH 249, Suite 430, Houston, TX 77070

| State stamp if applicable | The Correspondent and/or Program Manager is not an Insurer hereu |
|---|---|
| CERTCO 03 18 | is nor shall be liable for any loss or claim whatsoever. |



This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Policy's Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft.   Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts.   The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

T.   VALUABLE PAPERS AND RECORDS:   This Policy is extended to cover **Valuable Papers and Records.**

## SECTION VII - CONDITIONS

A.   ABANDONMENT:  There can be no abandonment to the Companies of any property.

B.   ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE:   Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any Certificates of Insurance on file with AmRisc which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all  other Insureds with respect to their rights, obligations and duties under this Policy.  Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Companies' obligations with respect to all Insureds.

C.   ARBITRATION CLAUSE:   All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent.  Within thirty days or receiving such notice, the  Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to and by whom and in what manner they shall be paid.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply  the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same.  If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

D.  ASSIGNMENT:  The Insured may not assign this Policy without the Companies' prior written consent.

E.  BRANDS AND LABELS:  If branded or labeled merchandise covered by this Policy is physically damaged and the Companies elect to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

F.  CANCELLATION AND ADDITIONS OR DELETIONS:

1.  This Policy can be canceled by the First Named Insured by providing the Companies with:

    a.  An advanced written request for cancellation stating when the cancellation shall be effective, and

    b.  The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2.  This Policy may be canceled by the Companies by giving to the Insured at least ninety (90) days written notice of cancellation or in the case of non-payment of premium or material mis-statement, at least ten (10) days written notice of cancellation.

3.  The cancellation will be effective even if the Companies have not made or offered a refund.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  If this Policy is canceled, the Companies will send the First Named Insured any premium refund due.

5.  Earned Premium:

    a.  For **Locations** NOT "Exposed to Hurricanes", if the Insured cancels this Policy or removes a **Location**, the short rate return premium is 90% of applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the Policy.

b.  For **Locations** "Exposed to Hurricanes", if the Insured cancels this Policy, removes a **Location** or reduces the amount of insurance on a **Location** and coverage existed any time during the period of June 1st to November 1st, the amount of premium the Companies will return will be the Unearned Premium for the **Location**. The Unearned Premium is the **Location** premium times the Unearned Factor noted below:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1-180 | 20.0% |
| 181-210 | 15.0% |
| 211-240 | 10.0% |
| 241-270 | 7.5% |
| 271-300 | 5.0% |
| 301-330 | 2.5% |
| 331 or more | 0% |

c.  However, subject to receipt of closing documents within 30 days of closing, this Policy allows pro-rata return premium for locations sold (but not for loss of management contract), subject to a maximum of 25% of scheduled values at time of the policy's inception.  This pro-rata clause shall not apply if the policy is cancelled in its entirety due to the sale of all the covered location(s).

d.  For **Locations** "Exposed to Hurricanes", if added (or coverage increased at an existing **location** which is "Exposed to Hurricanes") during the term of the Policy and coverage exists at any time during the period of June 1st to November 1st, the premium will be calculated at 100% of the annual rate, less the Unearned Factor noted in b. above.  Otherwise, it shall be pro-rata.

However, subject to receipt of closing documents, this Policy allows pro-rata additional premium for **Locations** purchased during the policy term.

e.  **Locations** of like kind and quality shall be added at the account rate, subject to the Unearned Factor noted in b. above.  **Locations** of differing kind or quality or locations in Dade, Broward or Palm Beach counties of Florida must be approved by AmRisc prior to attachment.

f.  If a **Location** is "Exposed to Hurricanes", the provisions of this clause replace any short rate provisions stipulated in this Policy, all subject to the Minimum Earned Premium provisions.

g.  "Exposed to Hurricanes" is defined to include any **Location** within 100 miles of the closest salt water of the Atlantic Ocean or the Gulf of Mexico.

h.  Coverage cannot be increased nor additional **Locations** added if they are "Exposed to Hurricanes" and a **Named Storm** is in existence, unless with the express written consent of AmRisc.

i.  Nothing herein will act to provide coverage outside the automatic acquisition clause elsewhere in the Policy.

j.  Non-payment of premium, material misstatement or non-compliance with underwriting requirements shall be considered a request by the Insured to cancel the Policy.

k.  Proof of mailing will be sufficient proof of notice of cancellation.

G.  CLAIMS REPORTING AND ADJUSTMENT:
All Claims shall be reported to:  AmRisc Claims Department
E-Mail: claims@amrisc.com
Ph: 252-247-8796
Fax: 252-726-2855

All Claims shall be adjusted by:  CJW and Associates
1420 Edgewater Drive, Suite 101, Orlando, FL 32804

and/or its assigned adjusters and the costs of such adjustments shall be borne by each Company in proportion to its pro-rata participation in this policy.

In the event the Company(s) elects to use its own adjusters or independent adjusters or consultants other than as listed above, expenses so incurred shall be borne solely by the Company.

It is further understood and agreed that, notwithstanding any provision contained elsewhere in this policy to the contrary, the Insured will be deemed to be in full compliance with any claim notice requirements, if notice of an occurrence is made to the Company[s] as soon as practicable after knowledge by the Insured or their representatives, that such occurrence will, or is likely to result in a claim under the policy. Any unintentional failure to report any occurrence or claim shall not invalidate coverage with respect to any such occurrence or claim.

H.  CONTROL OF DAMAGED MERCHANDISE:  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption.  No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Companies any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I.  CURRENCY:  Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the United States of America.

J.  DIVISIBLE CONTRACT:  Subject to Condition N. below, if the **Locations** described in this Policy include two or more **buildings** or the contents of two or more **buildings**, the breach of any condition of this Policy in respect to any one or more of the **buildings** insured or containing the Covered Property,  shall not prejudice the right to recover for physical loss or damage occurring in any **building** insured or containing the Covered Property where, at the time of such loss or damage, a breach of condition does not exist.

K.  INSPECTION AND AUDIT:  The Companies, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy.  Neither  the Companies' right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Companies, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Companies may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L.  JOINT LOSS AGREEMENT:  In the event the insurance company, if any, providing Equipment Breakdown insurance ('EBD insurer') disputes any portion of the claim made against that EBD insurer, but these Companies believe the EBD insurer should have paid that portion of the claim, then these Companies shall, upon written request of the Insured, pay to the Insured one-half of the

amount of the loss which is in disagreement, but in no event more than these Companies would have paid if there had been no Equipment Breakdown policy in effect, subject to the following conditions:

1. The amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and all of the insurers, is limited to the minimum amount remaining payable under the Equipment Breakdown policy;

2. The EBD insurer shall simultaneously pay to the Insured one-half of said amount which is in disagreement;

3. The payments by all of the insurers hereunder and acceptance of the same by the Insured signify the agreement of all the insurers to submit to and proceed with arbitration within 90 days of such payments; the arbitrators shall be three in number, one of whom shall be appointed by the Property insurance Companies and one of whom shall be appointed by the EBD insurer and the third shall be appointed with the consent of the Property insurance Companies and the EBD insurer, and the decision by the arbitrators shall be binding upon all the insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

4. The Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

5. The provisions of this clause shall not apply unless such other policy issued by the EBD insurer is similarly endorsed;

6. Acceptance by the Insured of sums paid pursuant to the provisions of this clause, including an arbitration award, shall not operate to alter, waive, surrender, or in any way affect the rights of the Insured against any of the insurers.

M. **LOSS PAYEES, LENDER'S LOSS PAYEES, AND MORTGAGEES (OR TRUSTEES):**

1. Loss, or damage, if any, under this Policy shall be payable to:

   a. any Loss Payee or Lender's Loss Payee as its interest may appear; and

   b. any Mortgagee (or Trustee) as its interest may appear under all present or future mortgages upon the insured property in which the aforesaid may have an interest as Mortgagee (or Trustee), in order of precedence of said mortgages.

2. As to the interest of the Lender's Loss Payee or Mortgagee (or Trustee) only, this insurance shall not be invalidated by any act or neglect of the Insured nor by any foreclosure or other proceedings or notice of sale relating to said property nor by any change in the title or ownership of said property, nor by the occupation of the insured **Locations** for purposes more hazardous than are permitted by this Policy; provided, that in case the Insured shall neglect to pay any premium due under this Policy, the Lender's Loss Payee or Mortgagee (or Trustee) shall, on demand pay the same.

   The Lender's Loss Payee or Mortgagee (or Trustee) must notify AmRisc of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the Lender's Loss Payee or Mortgagee (or Trustee) and, unless permitted by this Policy it shall be noted hereon and the Lender's Loss Payee or Mortgagee (or Trustee) shall, on demand, pay the premium for such increased hazard; otherwise, this entire Clause 2. shall be null and void.

3.  If the Companies cancel this Policy, they will give:

    a.  ten (10) days before the effective date, if cancellation is for non-payment of premium or material mis-statement; or

    b.  ninety (90) days before the effective date, if cancellation is for any other reason.

4.  Nothing herein shall affect the rights of the Companies to suspend insurance [which shall include any insurance applying to the interest of the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee)] on any machine, vessel or part thereof in accordance with the Suspension Clause of Equipment Breakdown (if such coverage is provided by endorsement to this policy).   The Companies agree to furnish the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) with a copy of the suspension notice at the Loss Payee's, Lender's Loss Payee's, or Mortgagee's (or Trustee's) address.

5.  Whenever the Companies shall pay the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) any sum for loss under this Policy and shall claim that, as to the Insured, no liability therefor existed, the Companies shall, to the extent of such payment, be subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at their option pay to the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of all rights and securities; but no subrogation shall impair the right of the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) to recover the full amount of the Loss Payee's, Lender's Loss Payee's or Mortgagee's (or Trustee's) claim.

N.  MISREPRESENTATION AND FRAUD:   This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

O.  OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE:  In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible.   Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

However, in the event the Named Insured is a Condominium Association, the Unit-Owner may have other insurance covering the same property as this insurance.   This insurance is intended to be Primary, and not to contribute with other such Unit-Owner insurance.

P.  PROTECTION AND PRESERVATION OF PROPERTY:  In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Covered Property hereunder shall be added to the total physical loss or damage otherwise recoverable under this Policy and be subject to the applicable deductible, sublimit of liability and the Policy Limit.

Q.  REINSTATEMENT OF LIMITS:  Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

R.  REQUIREMENTS IN CASE OF LOSS:  The Insured shall:

    1.  Give immediate written notice of any loss or damage to AmRisc Claims Department;

    2.  Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;

3. Protect the property from further loss or damage;

4. Separate the damaged and undamaged personal property;

5. Maintain such property in the best possible order;

6. Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;

7. Furnish all other documents or insurance policies that the Companies may reasonably require;

8. Allow the Companies to access and inspect any of the damaged or undamaged property; and

9. Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within ninety (90) days after the loss, unless such time is extended in writing by the Companies, the Insured shall provide the Companies with a Proof of Loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1. The time and origin of the loss;

2. The interest of the Insured and of all others in the property;

3. The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon;

4. All other contracts of insurance, whether collectible or not, covering any of said property; and

5. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

S. REVIEW OF VALUES: The Insured shall provide AmRisc at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all insured **Locations.**

Such values shall be reported separately for each **Location,** with separate figures shown for each type of coverage at each **Location.** The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an **Actual Cash Value** basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values. Time Element values (if covered) shall be provided in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to AmRisc. Receipt of said Statement of Values by AmRisc shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with AmRisc, or attached to this Policy.

T.  SALVAGE AND RECOVERIES:  All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

U.  SETTLEMENT OF CLAIMS:  The amount of loss for which the Companies may be liable shall be payable within thirty (30) days after Proof of Loss, as herein required, is received and accepted by the Companies and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Companies or an amount is determined by binding Arbitration in accordance with the provisions of this Policy.

The Companies shall have the option to take all, or any part of the property at the agreed or arbitrated value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention to do so within sixty (60) days after receipt of the Proof of Loss herein required.

V.  SEVERAL LIABILITY NOTICE
    LMA5096 03/08 (Combined Certificate) - amended

The liability of an insurer under this Policy is several and not joint with other insurers party to this Policy.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly liable for the proportion of liability underwritten by any other insurer.  Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this Policy.
The proportion of liability under this Policy underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this Policy.
In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).   The liability of each member of the syndicate is several and not joint with other members.  A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other insurer that may  underwrite this Policy.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA United Kingdom.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.  Although reference is made at various points in this clause to "this Policy" in the singular, where the circumstances so require this should be read as a reference to Policies in the plural.

Wherever the word Insurers is mentioned in this clause, this is deemed to also mean reinsured in respect of reinsurance business.

W.  SUBROGATION:  The Companies may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment has been made by the Companies, but the Companies shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

The Companies do waive rights of recovery against any unit-owner of a Condominium Association.

However, notwithstanding the foregoing, the Companies shall be subrogated to all the Insured's rights of recover against:

1.  any Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and

    2.   any manufacturer or supplier of machinery, equipment or other property, whether named as an Insured or not, for the cost of making good any loss or damage which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Companies and, upon the Companies' request and expense will:

    1.   Attend hearings and trials; and

    2.   Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

X.   SUIT AGAINST COMPANIES:  No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twelve (12) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

Y.   TERRITORIAL LIMITATIONS:  Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Z.   TITLES OF PARAGRAPHS:  The titles of the various paragraphs of this Policy (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

AA. VACANCY:  The Insured has permission to cease business operations or to have any insured **Location** vacant or unoccupied, provided that the existing fire protection, security and alarm services are maintained. The insured **Location** is considered vacant or unoccupied when it does not contain adequate Covered Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations. The Insured must notify AmRisc no later than 90 days after the cessation of business operations, vacancy or un-occupancy.  If not so notified within 90 days, the Deductible shall be double the applicable peril deductible. This restriction shall not apply to any **Location** in the course of construction or renovation.

## SECTION VIII - POLICY DEFINITIONS

A.  **Actual Cash Value:** The following is added to any provision which uses the term Actual Cash Value:

Actual Cash Value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.  Actual Cash Value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The Actual Cash Value of the lost or damaged property may be significantly less than its replacement cost.