UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLEAN PRO CARPET & UPHOLSTERY, INC., ET AL. | * | CIVIL ACTION NO. 20-1550 |
| | * | |
| | * | SECTION: "G"(1) |
| VERSUS | * | |
| | * | JUDGE NANNETTE JOLIVETTE BROWN |
| UPPER PONTALBA OF OLD METAIRIE CONDOMINIUM ASSOCIATION, INC. | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court are (1) the Motion to Quash Subpoena Duces Tecum Issued to Young & Associates, Inc. ("Y&A") filed by Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company, United Specialty Insurance Company, Safety Specialty Insurance Company, Old Republic Union Insurance Company (collectively "Insurers") and Cramer Johnson Wiggins & Associates, Inc. ("CJW" and with Insurers, the "Defendants") (Rec. Doc. 27); (2) the Defendants' Motion to Quash Subpoena Duces Tecum Issued to Sedgwick Claims Management Services, Inc. ("Sedgwick") (Rec. Doc. 74); and (3) the Motion to Compel Sedgwick to Produce Documents filed by Clean Pro Carpet & Upholstery, Inc. ("Clean Pro") (Rec. Doc. 80). For the following reasons, the Motions to Quash (Rec. Docs. 27, 74) are DENIED and the Motion to Compel (Rec. Doc. 80) is GRANTED.

Background

This lawsuit arises out of a February 2, 2019, fire at the Upper Pontalba of Old Metairie Condominium buildings ("Upper Pontalba") that damaged or destroyed over 30 condo units and common areas within the building. The Upper Pontalba Condominium Associate ("UPCA") contracted Clean Pro to provide labor, equipment, and materials for fire mitigation services. UPCA made a claim against the Insurers for coverage. The Insurers hired CJW as third-party

1

administrator to handle claims processing. And CJW hired Y&A and Sedgwick. According to Clean Pro, Y&A and Sedgwick were hired to serve as on-site consultants to assist with the inspection and preparation of the scope and costs of repairs for the fire, smoke, and water damages. Defendants say Y&A and Sedgwick were retained "[g]iven some of the potential concerns regarding the excessiveness of the initial invoices from Clean Pro." (Rec. Doc. 27-1, at 2; Rec. Doc. 74-1, at 2). It is not clear the exact date Y&A and Sedgwick were retained. However, the Y&A privilege log contains documents dated as early as February 6, 2019, and Eric Lewis of Sedgwick appears on some of the February 6, 2019, emails. The Insurers do not appear to dispute that Y&A and Sedgwick were retained on or about February 6, 2019, just four days after the fire.

Clean Pro submitted its first invoice for payment on February 18, 2019, and its sixth and final invoice on April 19, 2019. In April 2019, the Insurers approved payment of Clean Pro's first three invoices and issued funds to the UPCA, which paid Clean Pro. But on May 20, 2019, CJW notified UPCA that there might not be coverage, in part, for the Clean Pro invoices. CJW requested additional documents to complete its investigation of Clean Pro's claim. Partial payment on the invoices was made on August 1, 2019. Clean Pro first learned the Insurers and CJW had retained counsel on August 29, 2019. Clean Pro filed this lawsuit seeking payment on its outstanding invoices in state court on February 3, 2020. The matter was removed to this Court on May 27, 2020. Trial has not yet been set.

In the course of discovery, Clean Pro served subpoenas for documents on Y&A and Sedgwick seeking (a) a complete copy of any and all auditing/claims/adjustment files regarding Clean Pro's work as a result of the Upper Pontalba fire on February 2, 2019 and (2) all written or electronic correspondence, memorandums, estimates, and/or reports exchanged between the applicable consultant, CJW, and/or any insurers identified in the relevant All Risks Limited policy.

The Defendants have filed motions to quash the subpoenas,[1] arguing that the records requested are protected by the work-product doctrine. They submit that Sedgwick and Y&A were hired because they believed Clean Pro's invoices were excessive and that a conflict would arise. Because Sedgwick and Y&A were retained to provide investigation services, Insurers argue that Sedgwick and Y&A's entire files are subject to the work product doctrine. They have produced approximately 19,000 pages of documents from the Y&A file, approximately 1,000 pages of Sedgwick's file, and a privilege log for each file. No emails, reports, or analyses were produced.

Clean Pro opposes the motions to quash and has also filed a motion to compel as to the Sedgwick subpoena.[2] It argues that communications with unrelated parties and documents provided the Defendants' expert are not protected by the work product doctrine. It argues that the Defendants have not established that the documents withheld were prepared in anticipation of litigation. It argues further that the Defendants' blanket claim of privilege is without merit because the investigation and evaluation of claims for insurance is part of the regular and ordinary business of insurance companies. It submits that the Defendants retained Sedgwick and Y&A soon after the fire and before any invoices were submitted. Many of the documents were created while Clean Pro's invoices were being paid in full. Thus, it insists, litigation was not anticipated. Clean Pro also argues that, even if the work product doctrine did apply, it is entitled to discover the documents because it has a substantial need for the materials and cannot obtain their substantial equivalent by other means.

---

[1] When the first motion to quash (as to the Y&A subpoena) was filed, the Court ordered Clean Pro and the Insurers to meet and confer and discuss the issues raised. (Rec. Doc. 29). The Insurers agreed to allow production of some documents and they agreed to produce a privilege log for documents being withheld. (Rec. Doc. 63). The improper service issued was also resolved by the issuance and service of a new subpoena. Id. The submission date on the motion to quash was continued so that Clean Pro could review the response. Finding the response inadequate, Clean Pro filed an opposition memorandum. The motion to quash the Sedgwick subpoena followed thereafter.
[2] No opposition memorandum has been filed.

In reply to the Motion to Quash the Y&A subpoena, the Defendants also argue that by producing some documents and a privilege log, the Motion to Quash is now moot and Clean Pro's privilege arguments must be addressed via a new motion. They add that they should be allowed an additional opportunity to establish the applicability of the work-product doctrine because they have withheld 50,000 pages and need more time to provide a more thorough privilege log.

Law and Analysis

1. *Work Product Doctrine Generally*

The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). As Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product doctrine extends to materials prepared by the party itself and representatives other than attorneys, but the requirement that protected materials be prepared in anticipation of litigation remains. If the party resisting discovery establishes that the materials are work product, the party seeking discovery can only obtain the documents if they are relevant and proportional to the needs of the case and "it has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means." Fed. R. Civ. Proc. 26(b)(3)(A); see Lassere v. Carroll, No. CIV.A. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014).

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Campos, 20 F.3d 1171 (5th Cir. 1994) (quoting Nobles, 422 U.S. at 238) (alteration omitted). Thus, even when a party shows it has substantial need for the materials, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a

party's attorney or other representative concerning the litigation." Fed. R. Civ. Proc. 26(b)(3)(B). Such materials are known as "opinion work product." "The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S., 768 F.2d 719, 721 (5th Cir. 1985)

2. *Insurance Claims Files*

Because only documents prepared in anticipation of litigation are protected by the work-product doctrine, "[m]aterials assembled in the ordinary course of business," are excluded from work product materials. El Paso, 682 F.2d at 542 (quoting Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 501 (1969, 1970) (alteration in original). But the work product "privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)).

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.

Piatkowski v. Abdon Callais Offshore, L.L.C., No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (footnotes omitted).

An insurance company is "in the business of conducting, investigating and evaluating claims against its policies," so determining whether claims investigation and claims adjustment

5

documents are discoverable requires a fact specific inquiry. Kansas City S. Ry. Co. v. Nichols Const. Co., No. CIVA 05-1182, 2007 WL 2461014, at *4 (E.D. La. Aug. 27, 2007); see Schenck v. State Farm Mut. Auto. Ins. Co., No. CV 11-2598, 2012 WL 13001032, at *4 (E.D. La. June 15, 2012) (quoting Jones v. Secord, No. CIV.A. 11-91101-PBS, 2011 WL 2456097, at *3 (D. Mass. June 15, 2011)) ("Coverage investigations by insurance companies are not per se conducted in anticipation of litigation, and a determination as to whether documents generated during such investigations were prepared in anticipation of litigation, as opposed to in the ordinary course of business, should be made on a case-by-case basis."). "To show that a document was prepared in anticipation of litigation, courts have required that the insurer point to a 'critical factor that made it anticipate litigation . . . and offer specific facts demonstrating that the critical factor did indeed make the insurer deal with the insured in a different way.'" Kansas City, 2007 WL 2461014, at *4 (Stout v. Illinois Farmers Ins. Co., 852 F. Supp. 704, 707 (S.D. Ind. 1994)).

In Kansas City, for example, the court found that communications between the insurance company and its claims adjuster were protected by the work product doctrine because the accident was so serious and the damages so significant, that litigation would have been anticipated from the day of the accident. 2007 WL 2461014, at *6. But in Schenk, the court found that the majority of documents withheld by the insurance company defending a car accident personal injury claim by its insured were not protected. 2012 WL 13001032, at *5. The court had reviewed the documents *in camera* and determined that the insurance company had not retained counsel until after receiving a copy of the lawsuit, that there was no evidence that in house counsel was involved during two years of pre-suit claims handling, and there was no specific mention of any anticipated litigation. Id.

3. *Y&A Documents*[3]

The Court finds that as to the majority of the documents on the Y&A privilege log, the Defendants have failed to establish that they were prepared in anticipation of litigation. The privilege log makes clear that Y&A was involved as early as February 6, 2019. This was long before Clean Pro submitted any invoices. Thus, the Defendants' argument that Y&A was retained because of concerns regarding the excessiveness of Clean Pro's invoices is not supported. During the entire period that Clean Pro's invoices were being paid in full, there is no basis from which to conclude that the Defendants anticipated litigation. Even when Clean Pro was notified on May 20, 2019, that there might not be coverage for parts of its invoices, the Defendants have offered no reason why litigation was anticipated. Reviewing and sometimes denying part of a claim is part of the ordinary course of business of an insurance company, and should not be seen as an automatic trigger to anticipate litigation, as one might expect with, for example, an anticipated coverage denial. For example, in Dunn v. State Farm Fire & Cas. Co., the court noted that "whenever an insurer has a general suspicion about a claim which gives the insurer reason to believe it will deny the claim, the insurer may anticipate litigation." 122 F.R.D. 507, 510 (N.D. Miss. 1988). In that case, the day after the fire, the insured confessed to setting fire to his own house. Id. The insurer found out about the confession a week later and hired counsel within the next week. Id. The court found that although counsel is sometimes retained in the ordinary course of business to determine whether to deny a claim, because of the confession, the insurers anticipated litigation when they hired counsel. Id. Here, there is no evidence that the Insurers suspected fraud. The first objective

---

[3] The Court rejects the Defendants' suggestion that the motion to quash is moot because of their production of some documents and a privilege log. The Defendants maintain their privilege objection to complying in full. They have had the opportunity to reply to Clean Pro's arguments. The Court will address the privilege issues now and will not require the filing of new motions. The Court similarly rejects Defendants' request that they be allowed another chance to show why the documents withheld are privileged.

sign that the Defendants anticipated litigation was when they retained counsel on or about August 29, 2019.[4] There is no evidence that litigation was threatened by Clean Pro before that. There is no evidence that Defendants' concerns regarding Clean Pro's invoices rose to the level that they anticipated litigation. The Court finds that the Insurers have failed to satisfy their burden of establishing that they anticipated litigation prior to the time they retained counsel. Accordingly, documents and communications created before that date are not protected by the work-product doctrine. These documents must be produced.

Even after counsel was retained, Clean Pro cites a September 6, 2019, email from counsel for the Insurers stating that the remainder of Clean Pro's billing was under consideration and had not been denied or rejected. While some documents created after the retention of counsel will have been created in anticipation of litigation, others will still be part of the ordinary claims adjustment process. Indeed, most of the post-August 2019 documents on the privilege log do not appear to have any litigation related purpose. They include emails discussing equipment, sending invoices, discussing estimates and quotes, commenting on Covid19 delays, and concerning costs to date on flooring restoration. These documents appear to be generated in the ordinary course of adjusting an insurance claim. Other documents, however, are protected. For example, Item 526 is an email "re: SDT/Clean Pro lawsuit" and Item 527 is an email "re: Clean Pro lawsuit." The Defendants have established these are protected (one by work product and the other by attorney-client privilege).

Other post-retention of counsel documents may be protected by the work product doctrine, but it is unclear. Item 487 dated August 25, 2019, was an email with "notes to self re: Clean Pro invoices." Item 521 is dated July 8, 2020, and is a Cost Analysis Review, and Item 512 is a Status

---

[4] This is the date Clean Pro received notice that the Insurers had retained counsel. The Insurers have presented no alternative date on which they retained counsel.

Update Report. These might, or might not, relate to litigation. To the extent any of the post-counsel documents are properly protected because their primary purpose behind their creation was the anticipated or existing litigation, the Defendants may revise their privilege log to provide more information to establish that the documents are entitled to protection. All others must be produced.

There are additional documents for which the date column on the privilege log is blank. Most of these do not appear to be related to litigation. Some, however, appear to implicate issues with the Clean Pro invoices. Items 537 through 543, 546 through 552, and 554 through 557 are titled some variant of "for Discussion Y&A Cost Analysis of Clean Pro revised invoice," and appear to be dated between March 16, 2019, and May 14, 2019. Items 544 through 545 are dated May 15 and 16, 2019 and titled "Y&A Cost Analysis NDT." Items 558 through Item 560 are undated and are titled "Y&A Cost Analysis." However, as the Court concluded above, the Defendants have failed to demonstrate that they anticipated litigation prior to the time they retained counsel. Analysis of invoices is part of the normal claims adjustment process. These documents must be produced.

Documents pertaining to unrelated matters are not relevant and need not be produced (e.g., items 1-13 related to a 2016 fire claim and item 531 concerning an unrelated file in North Carolina).

Clean Pro also argues that any documents disclosed to the Insurers' expert, McGovern Green are not protected by the work product doctrine. The Defendants have not addressed this argument. To the extent there is any dispute, the Court finds that such documents are discoverable under Rule 26(a)(2)(B)(ii). They must be produced.

9

   *4. Sedgwick Documents*

Clean Pro first addresses communications involving third parties that are listed on the privilege log. These documents include communications between the Insurers/CJW and UPCA, and communications between Insurers/CJW/UPCA and the contractor hired to perform the reconstruction project. The Defendants have not specifically addressed these communications. The Court finds that Defendants have not established that the communications were prepared in anticipation of litigation. They must be produced.

As to the remainder of the Sedgwick documents, as with the Y&A documents, the Court finds that the Insurers have failed to meet their burden of demonstrating that documents prepared prior to the retention of counsel were prepared in anticipation of litigation. There appears to be no dispute that Sedgwick was retained in the days immediately following the fire, long before any Clean Pro invoices had been submitted. There is no factual support for the Defendants' argument that Sedgwick was retained because of concerns about Clean Pro's excessive early invoices. Even as the Insurers began to withhold payment, they have not shown why they anticipated litigation. The adjustment of claims, including rejecting parts of invoices, is part of the normal claims adjustment process. Once the Insurers retained counsel, they anticipated litigation. But as discussed above, that does not mean that every document created thereafter is privileged. Documents that are part of the ordinary claims adjustment process remain discoverable because their primary purpose is not anticipation of litigation.

Unlike the Y&A privilege log, though, the Sedgwick log contains only documents dated after the retention of counsel in August 2019. Some of these are clearly related to litigation, like the 8/26/2020 email "regarding litigation" and the 8/27/20 email regarding "proposed settlement." They are protected from disclosure. But the vast majority seem to relate to "adjustment of claims"

or "Cost Analysis." The Defendants have not established that they were created in anticipation of litigation. To the extent any of the post-counsel documents are properly protected because the primary purpose behind their creation was the anticipated or existing litigation, the Defendants may revise their privilege log to provide more information to prove that this is so.

## Conclusion

For the foregoing reasons, the Court finds that the Insurers have failed to meet their burden of establishing that Y&A and Sedgwick documents created prior to the retention of counsel in August 2019 were created in anticipation of litigation. All documents created prior to that date must be produced within 30 days. Even as to documents created after counsel was retained, the Insurers have failed to establish that all documents are protected. Defendants will be allowed to withhold post-counsel documents, but only if they were created in anticipation of litigation and not in the ordinary course of adjusting claims. They shall prepare a revised privilege log for such documents with additional information and produce it to Clean Pro within 30 days. If Clean Pro disputes the privileged nature of such documents, the parties shall meet and confer and, if necessary, new motions may be filed. Accordingly, the Insurers' Motions to Quash are DENIED and Clean Pro's Motion to Compel is GRANTED.

New Orleans, Louisiana, this  8th  day of December, 2020.

                                               Janis van Meerveld
                                       United States Magistrate Judge