## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CLEAN PRO CARPET & UPHOLSTERY CARE, INC., et al.**                          **CIVIL ACTION**

**VERSUS**                          **NO. 20-1550**

**UPPER PONTALBA OF OLD METAIRIE CONDOMINIUM ASSOCIATION, INC., et al.**                          **SECTION: "G"(1)**

## ORDER

In this litigation, Plaintiffs Clean Pro Carpet & Upholstery Care, Inc. ("Clean Pro") and Southern Cat, Inc. ("Southern Cat") (collectively, "Plaintiffs") allege that they contracted with the Upper Pontalba of Old Metairie Condominium Association, Inc. (the "Association") to fix condominium buildings destroyed in a fire.[1] Plaintiffs assert that, despite completing the work, they did not receive payment under the terms of the contract from the Association or from the Association's insurers.[2] Pending before the Court is Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company, United Specialty Insurance Company, Safety Specialty Insurance Company, and Old Republic Union Insurance Company (collectively, "Insurance Company Defendants"), and Cramer, Johnson, Wiggins and Associates, Inc.'s ("CJW") (together with Insurance Company Defendants, "Defendants") "Motion to Stay and Compel Arbitration."[3] Clean Pro opposes the motion.[4] Having considered the motion, the memoranda in support and in opposition, the record,

---

[1] Rec. Doc. 1-4; Rec. Doc. 9.

[2] *Id.*

[3] Rec. Doc. 11.

[4] Rec. Doc. 17.

and the applicable law, the Court grants the motion in part and denies the motion in part.

## I. Background

On February 2, 2019, a fire broke out and allegedly destroyed over thirty (30) condominiums at the Upper Pontalba of Old Metairie Condominium buildings.[5] After the fire, the Association hired Clean Pro pursuant to a contract to provide restoration services on the damaged buildings.[6] Under the contract, the Association agreed to pay Clean Pro for its work and to assign to Clean Pro proceeds the Association received from Insurance Company Defendants under the Association's insurance policy.[7] Defendant CJW served as the Third-Party Administrator for Insurance Company Defendants, processing claims related to the fire.[8] After being hired by the Association, Clean Pro entered into a subcontract agreement with Southern Cat.[9] Plaintiffs allege that they completed all required work under the contract and submitted invoices according to the rates set out in the contract.[10] Plaintiffs allege that the Association has failed to pay Plaintiffs as required under the contract and that Insurance Company Defendants have refused to pay Plaintiffs for a portion of the work completed.[11]

On February 3, 2020, Plaintiffs filed a petition in the 24th Judicial District Court for the Parish of Jefferson, naming the Association, Insurance Company Defendants, CJW, and over 50

---

[5] Rec. Doc. 9 at 8.

[6] Id.

[7] Id. at 9.

[8] Id. at 12.

[9] Id.

[10] Id. at 12–14.

[11] Id. at 16–17.

individual condominium unit owners as defendants.[12] Plaintiffs bring claims for breach of contract against the Association, breach of contract and breach of duty of good faith claims handling against Insurance Company Defendants, and negligence and bad faith claims handling against CJW.[13] Plaintiffs also claim that they are valid lienholders and are entitled to institute and pursue all legal remedies against the Association and the individual unit owners, including enforcement of Plaintiffs' Statements of Claim and Privilege, for the total unpaid amount of $2,367,296.68, plus interest, costs, and attorneys' fees.[14]

On April 22, 2020, Defendants demanded that Plaintiffs submit to arbitration pursuant to the arbitration provision contained in the insurance policy Insurance Company Defendants issued to the Association, under which the Association then assigned proceeds to Clean Pro.[15] On May 28, 2020, Defendants removed the case to this Court, asserting jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which Congress has implemented at 9 U.S.C. § 201, *et seq.* (the "Convention Act").[16]

Clean Pro wrote to Defendants on May 29, 2020, likewise invoking the arbitration clause between Plaintiffs and Insurance Company Defendants and naming Chuck Howarth as its appointed arbitrator.[17] On July 9, 2020, Plaintiffs filed a First Amended Complaint adding Certain Underwriters at Lloyds of London and International Insurance Company of Hannover SE as

---

[12] Rec. Doc. 1-4.

[13] *Id.* at 11–14.

[14] *Id.* at 14–15.

[15] Rec. Doc. 11-3 at 3.

[16] Rec. Doc. 1 at 2. *See Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 375 (5th Cir. 2006) ("Among the Convention Act's provisions are jurisdictional grants giving the federal district courts original and removal jurisdiction over cases related to arbitration agreements falling under the Convention.").

[17] Rec. Doc. 17 at 3.

defendants.[18]

Defendants thereafter filed the instant motion on July 24, 2020, seeking to compel arbitration of Plaintiffs' claims against Insurance Company Defendants and CJW and to remove Howarth as Clean Pro's arbitrator.[19] Clean Pro filed an opposition to the instant motion on August 18, 2020.[20] With leave of Court, Defendants filed a reply to Clean Pro's opposition on August 24, 2020.[21] With leave of Court, Clean Pro filed a sur-reply on August 28, 2020.[22]

## II. Parties' Arguments

### A.   *Defendants' Arguments in Support of the Motion*

Defendants argue four main points in the instant motion. First, Defendants argue that there is a valid arbitration agreement under the Convention Act.[23] Next, Defendants assert that the dispute at hand falls within the scope of this valid arbitration agreement.[24] Third, Defendants allege that Clean Pro's appointed arbitrator must be disqualified.[25] Fourth, and finally, Defendants urge the Court to enforce the arbitration agreement according to its terms.[26]

Defendants begin by arguing that the arbitration provision included in the insurance policy

---

[18] Rec. Doc. 9. The First Amended Complaint also removed Plaintiffs' claims against several individual unit owners.

[19] Rec. Doc. 11.

[20] Rec. Doc. 17.

[21] Rec. Doc. 21.

[22] Rec. Doc. 24.

[23] Rec. Doc. 11-3 at 4–5.

[24] *Id.* at 6.

[25] *Id.* at 7–8.

[26] *Id.* at 8.

between Defendants and the Association, applied here to the dispute between Defendants and Clean Pro, satisfies the requirements for an arbitration agreement under the Convention Act.[27] Defendants assert that the Act defines a valid arbitration agreement using four factors: (i) a written agreement to arbitrate; (ii) an agreement that provides for arbitration in a convention signatory nation; (iii) an agreement that arises out of a commercial legal relationship; and (iv) an agreement to which a party is not an American citizen.[28] Defendants allege that all four factors are present in the instant dispute.[29] First, the insurance policy between the Association and Insurance Company Defendants contains a written arbitration provision.[30] Second, the agreement provides for arbitration in New York, a signatory state to the Convention Act.[31] Third, the agreement arises out of a commercial legal relationship between Insurance Company Defendants and the Association.[32] Fourth, non-American citizen insurers, Certain Underwriters at Lloyds of London and International Insurance Company of Hannover SE, are parties to the agreement.[33]

Defendants next argue that Clean Pro's claims fall within this arbitration agreement.[34] Defendants assert that the arbitration agreement between Insurance Company Defendants and the Association applies broadly to all disputes between the parties.[35] Defendants argue that an

---

[27] *Id.* at 4.

[28] *Id.*

[29] *Id.* at 5.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 6.

[35] *Id.*

agreement that permits arbitration in a broad array of instances has been upheld by federal courts previously and should be upheld in the instant case as well.[36]

Defendants' third argument is that Clean Pro's appointed arbitrator must be disqualified.[37] Defendants allege that Clean Pro's appointed arbitrator, who is also it's hired expert, is not disinterested, has a conflict of interest, and, accordingly, is not a permissible arbitrator.[38]

Finally, Defendants argue that the arbitration agreement must be enforced according to its terms.[39] Defendants urge the Court to require the arbitration panel to consist of senior employees engaging in insurance underwriting or claims, to take place in New York, to apply New York law, and to refuse to impose punitive damages.[40]

**B.   *Clean Pro's Arguments in Opposition to the Motion***

In response, Clean Pro makes two main arguments. First, Clean Pro states that it does not object to arbitrate its claims against Insurance Company Defendants but objects to Defendants' assertion that the claims against CJW are also subject to arbitration.[41] Second, Clean Pro argues that its arbitrator, Chuck Howarth, should not be disqualified.[42]

First, Clean Pro asserts that it agrees to arbitrate its claims against Insurance Company Defendants and agrees with Defendants that the arbitration provision exists in the insurance policy between Insurance Company Defendants and the Association, is valid, and is applicable

---

[36] *Id.*

[37] *Id.* at 7.

[38] *Id.*

[39] *Id.* at 8.

[40] *Id.*

[41] Rec. Doc. 17 at 4.

[42] *Id* at 5.

in the instant case.[43] Clean Pro does not dispute that it should be considered a signatory to the arbitration provision since it was assigned proceeds by the Association under the insurance policy.[44] Clean Pro argues, however, that this arbitration agreement does not extend to its claims against CJW.[45] Clean Pro argues that CJW is not a party to the policy containing the provision and, as such, Clean Pro has not agreed to arbitrate its dispute with CJW.[46]

Clean Pro's second argument concerns the use of its appointed arbitrator, Chuck Howarth.[47] Clean Pro argues that Mr. Howarth should not be disqualified as its arbitrator for several reasons.[48] Clean Pro asserts that this Court lacks authority to disqualify Mr. Howarth pre-arbitration and that this is a matter instead for the arbitration panel, with Court review after the panel's decision.[49] Moreover, even if this Court does consider Defendants' motion to disqualify Mr. Howarth, Clean Pro asserts that the motion should be denied.[50] Under the arbitration provision at hand, Clean Pro contends that it had the right to select an arbitrator and that this arbitrator is not required to be disinterested.[51] Instead, Clean Pro asserts that arbitrators are meant to advocate for the party that appointed them.[52]

---

[43] *Id.* at 4.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 4–5.

[47] *Id* at 5.

[48] *Id.* at 5–11.

[49] *Id.* at 5–7

[50] *Id.* at 7–11.

[51] *Id.*

[52] *Id.* at 7.

## C.     *Defendants' Arguments in Further Support of the Motion*

In the reply brief, Defendants again argue that Mr. Howarth should be disqualified as Clean Pro's arbitrator.[53] Defendants refute Clean Pro's argument that this Court cannot disqualify an arbitrator pre-arbitration and assert that this Court has the power to disqualify an arbitrator if the arbitrator is biased.[54] Defendants claim that such bias exists here because Mr. Howarth is Clean Pro's hired expert and will be called as a witness during the arbitration.[55] While arbitrators are not required to be neutral, Defendants argue that they still must be disqualified when they are clearly not impartial.[56] Defendants argue that Clean Pro has provided no support for the notion that a hired expert can serve as an arbitrator.[57]

Defendants again assert that the arbitration provision should be enforced as written.[58] Defendants state that Clean Pro did not refute this argument and, as such, the arbitration provision should be applied in full.[59]

Finally, Defendants argue that Clean Pro is required to arbitrate its claims against CJW.[60] Defendants assert that non-signatories to an arbitration provision can still be bound—and bind others—to the provision under general principles of contract law including incorporation by

---

[53] Rec. Doc. 21 at 1.

[54] *Id.* at 2.

[55] *Id.*

[56] *Id.* at 2–3.

[57] *Id.* at 3–6.

[58] *Id.* at 6.

[59] *Id.* at 6–7.

[60] *Id.* at 7.

reference, assumption, agency, veil-piercing, and estoppel.[61] Defendants assert that Clean Pro is

a signatory to the provision because Clean Pro was assigned all rights afforded to the Association

under the terms of the insurance policy.[62] Because Clean Pro is a signatory to the arbitration

provision through assignment, Defendants assert that Clean Pro should be estopped from avoiding

arbitration against CJW.[63] Moreover, Defendants argue that the claims against CJW are so related

to those against Insurance Company Defendants that it would make little sense to adjudicate the

claims against CJW separately.[64]

**D.     *Clean Pro's Arguments in Further Opposition to the Motion***

In the sur-reply brief, Clean Pro reiterates its argument that its arbitrator should not be

disqualified.[65] Clean Pro asserts that the arbitration provision at issue does not specifically require

an impartial arbitrator, undermining Defendants' argument that case law supports disqualifying

Clean Pro's arbitrator.[66] To the contrary, Clean Pro argues that case law supports Clean Pro's

position that a witness is also permitted to be an arbitrator.[67]

Clean Pro responds to Defendants' argument regarding the enforceability of the terms of

the arbitration agreement by asserting that any matters relating to the substance of the agreement

must be decided by the arbitration panel, not this Court.[68] Clean Pro reiterates that it agrees to

---

[61] *Id.*

[62] *Id.*

[63] *Id.* at 7–8.

[64] *Id.* at 8.

[65] Rec. Doc. 24 at 1.

[66] *Id.* at 2.

[67] *Id.*

[68] *Id.* at 3–4.

arbitrate its claims against Insurance Company Defendants but argues that any issues surrounding enforceability of specific terms of the arbitration provision should be left to the arbitration panel to interpret.[69]

Finally, Clean Pro responds to Defendants' argument regarding the applicability of the arbitration provision to its claims against CJW.[70] Clean Pro argues that its claims against CJW are not, as Defendants argue, intertwined with Clean Pro's claims against Insurance Company Defendants.[71] Clean Pro asserts that CJW is a third-party administrator, not an insurer, and that Clean Pro's claims against CJW relate not to the insurance policies between the Association and Insurance Company Defendants but instead to CJW's alleged negligence and bad faith claims practices as third-party administrator.[72]

### III. Legal Standard

In 1958, the United Nations Economic and Social Council adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").[73] In 1970, the United States acceded to the treaty.[74] The Convention was subsequently incorporated by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.*, which is also known as the Convention Act.[75] Section 201 of the FAA provides that the Convention shall be enforced in

---

[69] *Id.* at 4.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 4–5.

[73] *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011).

[74] *Id.*

[75] *Acosta.*, 452 F.3d at 375.

United States courts.[76] The Supreme Court has stated that "[t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[77]

Agreements arising under the Convention are subject to the provisions of the FAA unless the FAA is in "conflict" with the Convention.[78] The FAA was enacted in order to "allow[] a party to . . . an arbitration agreement to petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement."[79] In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[80] The Fifth Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[81] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[82]

---

[76] 9 U.S.C. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.").

[77] *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

[78] *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637, 1644 (2020).

[79] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (internal quotation marks omitted).

[80] 379 F.3d 159, 166 (5th Cir. 2004).

[81] *Id.*

[82] *Id.*

Under the FAA, there is a "strong federal policy in favor of enforcing arbitration agreements."[83] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .[84]

"[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay."[85]

## IV. Analysis

Defendants argue four main points in the instant motion. First, Defendants argue that there is a valid arbitration provision under the requirements of the Convention Act.[86] Next, Defendants assert that the dispute at hand falls within the scope of this valid arbitration provision.[87] Third, Defendants allege that Clean Pro's appointed arbitrator must be disqualified.[88] Fourth, and finally, Defendants urge the Court to enforce the arbitration provision according to its terms.[89] Notably, Clean Pro concedes that there is a valid and enforceable arbitration provision in the insurance policy Insurance Company Defendants issued to the Association and that Clean Pro's

---

[83] *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

[84] 9 U.S.C. § 3.

[85] *Texaco Expl. & Prod. Co.*, 243 F.3d at 909 (citing *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

[86] Rec. Doc. 11-3 at 4–5.

[87] *Id.* at 6.

[88] *Id.* at 7–8.

[89] *Id.* at 8.

claims against Insurance Company Defendants fall within the scope of this provision.[90] Clean Pro disputes only: (1) whether Plaintiffs' claims against CJW are subject to arbitration; (2) whether Clean Pro's appointed arbitrator must be disqualified; and (3) whether the Court should enforce the "terms" of the arbitration provision.[91] Accordingly, the Court addresses each of these issues in turn.

## A.        Whether Clean Pro Must Arbitrate Its Claims with CJW

Traditionally, federal courts applied the FAA only to signatory parties of an arbitration agreement.[92] However, this principle was modified by the Supreme Court in *Arthur Anderson LLP v. Carlisle*.[93]  In *Carlisle*, the Supreme Court held that the FAA requires federal courts to apply state contract law to determine the "scope" of arbitration agreements, "including the question of who is bound by them."[94] Under state contract law, the Supreme Court held that nonsignatories to a contract could enforce an arbitration provision "because 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel . . . ."[95] As such, "whenever the relevant state law would make a contract to arbitrate a particular dispute enforceable by a nonsignatory, that nonsignatory is entitled to request and obtain a stay under [Section 3 of the FAA] and an order to

---

[90] Rec. Doc. 17 at 4.

[91] *Id*. at 4–11.

[92] *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001); *see also Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989).

[93] 556 U.S. 624, 631 (2009).

[94] *Id*. at 630.

[95] *Id*. at 631 (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)) (internal quotation marks omitted).

compel arbitration under [Section 4 of the FAA] . . . ."[96] In the context of estoppel claims specifically, courts have recognized that "[e]quitable estoppel is [] more likely to apply when the party resisting arbitration is a signatory [], as opposed to when the resisting party is a non-signatory."[97]

The Supreme Court has made clear that state law contract principles apply to agreements arising under the Convention as well, stating that "[g]iven that the Convention was drafted against the backdrop of domestic law, it would be unnatural to read Article II(3) [of the Convention] to displace domestic doctrines. . . ." and "[f]ar from displacing domestic law, the provisions of Article II contemplate the use of domestic doctrines to fill gaps in the Convention."[98] Therefore, the Court must apply state contract law to determine whether Clean Pro's claims against CJW are subject to arbitration.

As to *which* state's law to apply in the instant case, the parties present arguments under the laws of multiple states. Clean Pro invokes New York state law to support its argument that it cannot be compelled to arbitrate with CJW.[99] Defendants include arguments under New York state law and Louisiana state law to supports its claims in favor of arbitration.[100] The arbitration provision between Insurance Company Defendants and the Association mandates that New York law applies to interpretation of the insurance policy.[101] Accordingly, the Court applies New York

---

[96] *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014).

[97] *In re Apple iPhone 3G & 3GS MMS Mktg. & Sales Practices Litig.*, 864 F. Supp. 2d 451, 459 (E.D. La. 2012) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F.Supp.2d 825, 831 (N.D. Cal. 2007)).

[98] *GE Energy*, 140 S.Ct. at 1645.

[99] Rec. Doc. 17 at 5.

[100] Rec. Doc. 21 at 7.

[101] Rec. Doc. 17-1 at 6.

14

law to resolve this issue.[102]

Under New York law, "the general rule is that only a party to an arbitration agreement is bound by or may enforce the agreement"[103] because "[a]rbitration is a matter of contract 'grounded in agreement of the parties.'"[104] New York courts have deviated from this general principle under "limited circumstances"[105] when "relevant state contract law allows the non-party to enforce the arbitration agreement."[106] Such a deviation is appropriate, for example, in cases of estoppel, through which a court can "estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."[107] This form of estoppel applies in two different scenarios: (1) when the "signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract," or (2) "when each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement,

---

[102] *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59 (1995) ("The choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship."); *see also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 528–30 (5th Cir. 2019) (applying Texas law to a dispute under an agreement containing "multiple references to Texas."); *Crawford*, 748 F.3d at 255 (determining that Arizona law was "made controlling by the Provider Agreement's choice-of-law clause"). Even if this Court were to apply Louisiana law, New York law would still apply, as "Louisiana courts have held that the validity of an arbitration agreement is determined by the law selected in the agreement itself." *Story v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 427 F. Supp. 3d 822, 828 (E.D. La. 2019) (citing *Prescott v. Northlake Christian Sch.*, 369 F.3d 491, 496 (5th Cir. 2004)).

[103] *Degraw Const. Grp., Inc. v. McGowan Builders, Inc.*, 58 N.Y.S.3d 152, 154 (N.Y. Sup. Ct. 2017).

[104] *Matter of Long Island Power Auth. Hurricane Sandy Litig.*, 87 N.Y.S.3d 576, 582 (N.Y. Sup. Ct. 2018).

[105] *Id.*

[106] *Degraw*, 58 N.Y.S.3d at 155.

[107] *Story*, 427 F. Supp. 3d at 828 (quoting *Hoffman v. Finger Lakes Instrumentation, LLC*, 789 N.Y.S.2d 410, 414 (N.Y. Sup. Ct. 2005)).

the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate."[108]

Under the first scenario, it is unclear whether Clean Pro is alleging that CJW and Insurance Company Defendants engaged in concerted misconduct. Clean Pro repeatedly refers to CJW as the "agent" of Insurance Company Defendants[109] who was "acting on behalf of" Insurance Company Defendants.[110] Clean Pro further alleges that both Insurance Company Defendants and CJW failed to pay Clean Pro.[111] Clean Pro does not, however, explicitly allege joint misconduct between all Defendants.

Regardless, Clean Pro's claims against CJW should proceed to arbitration under the second scenario. While CJW is a non-signatory to the arbitration provision at issue, Clean Pro's claims against CJW relate directly to the arbitration provision between Insurance Company Defendants and the Association. Clean Pro's claims repeatedly refer to CJW as "acting on behalf of [Insurance Company Defendants] to handle the claims processing for the UPCA claim."[112] Clean Pro sent "daily executive summaries detailing the progress of completion" to both Insurance Company Defendants and CJW, after which CJW was in charge of determining what was owed to Clean Pro by Insurance Company Defendants.[113] CJW undertook this analysis subject to the terms of the insurance policy containing the arbitration provision now at issue. [114]

---

[108] *Id.* (quoting *Hoffman*, 789 N.Y.S. at 415).

[109] *See, e.g.*, Rec. Doc. 1-2 at 9–10, 13.

[110] Rec. Doc. 9 at 12.

[111] *See, e.g.*, Rec. Doc. 1-2 at 12–13.

[112] *See, e.g., id.* at 9–10, 13; Rec. Doc. 9 at 19, 21.

[113] Rec. Doc. 9 at 12, 20.

[114] *Id.*

The existence of the insurance policy is essential to Clean Pro's claims that CJW allegedly failed to "resolve Clean Pro's claim in a timely manner" and "improperly denied Clean Pro's claim."[115] Accordingly, Clean Pro's claims against CJW "arise out of and relate directly" to the insurance policy containing the arbitration provision and CJW can enforce the arbitration provision against Clean Pro under the doctrine of estoppel. Therefore, the Court grants Defendants' motion to the extent it seeks to compel arbitration between Clean Pro and CJW.

## B.      *Whether Clean Pro's Arbitrator Must Be Disqualified*

The parties both apply New York state law, as well as the FAA, to the issue of whether Clean Pro's appointed arbitrator, Chuck Howarth, should be disqualified.[116] This Court will apply the FAA, along with consistent New York state law, because "for cases that fall within its reach, the FAA governs all aspects of arbitration procedure and pre-empts inconsistent state law."[117]

Under the FAA, courts have "only limited powers to modify the dispute resolution chosen by the parties."[118] Courts should resist involvement in an arbitral proceeding "prior to the issuance of an arbitral award" with the exception of "the determination as to whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement . . . ."[119] Any claim that "essentially goes to the procedure of arbitration" is best left for the arbitration panel itself, not a court.[120]

---

[115] *Id.* at 19.

[116] Rec. Doc. 10-2 at 7; Rec. Doc. 17 at 5.

[117] *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 830 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2d Cir. 1997).

[118] *Id.* at 833–34; *see also Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002) ("Under the FAA, jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited.").

[119] *Gulf*, 304 F.3d at 487.

[120] *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 452 (5th Cir. 2013).

A claim concerning the appropriateness of an appointed arbitrator falls within the ambit of a procedural challenge.[121] The FAA does not permit courts to intervene to "remove an arbitrator from service prior to award . . . ."[122] This includes intervening as to matters of bias as "fairness objections should generally be made to the arbitrator subject only to limited post-arbitration judicial review . . . ."[123] Any recusal decision is "best left to the discretion and good judgment of the individual arbitrator and not to the court, at least before an award is rendered," because "allowing courts to review before the fact the partiality of arbitrators would spawn endless litigation and unnecessarily delay the resolution of disputes."[124] This result would run counter to the purpose of the FAA, which is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and as easily as possible."[125] Succinctly stated, "there is no authorization under the FAA's express terms for a court to remove an arbitrator from service" but instead the FAA provides only for "potential vacatur of any award."[126] For this reason, "the FAA appears not to endorse court power to remove an arbitrator for any reason prior to issuance of an arbitral award."[127] As there has been no final decision made in this case, this Court will not intervene to remove Clean Pro's appointed arbitrator.

Even if this Court were to consider Defendants' request under New York state law,

---

[121] *Turner Indus. Grp., LLC v. Rain CII Carbon LLC*, No. CIV.A. 14-1031, 2014 WL 1870622, at *2 (E.D. La. May 8, 2014) (Morgan, J.).

[122] *Id.*

[123] *Id.* (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940–41 (4th Cir. 1999)).

[124] *Aviall*, 913 F. Supp. at 833–34.

[125] *Gulf*, 304 F.3d at 489.

[126] *Id.* at 490.

[127] *Id.*

Defendants' arguments for disqualifying Mr. Howarth are unpersuasive. New York courts have not required appointed arbitrators to be neutral. Instead, New York courts have said the exact opposite, clearly stating that "each party's arbitrator is not expected to be neutral."[128] New York courts recognize that "the very reason each of the parties contracts for the choice of his own arbitrator is to make certain that his 'side' will, in a sense, be represented in the tribunal," and have hesitated to question an appointed arbitrator because "the choice of an arbitrator [is] a valuable' contractual right not lightly to be disregarded." [129]

New York state law does permit courts to remove an arbitrator prior to a final arbitration decision. [130] However, New York courts recognize that such power should not be utilized unless there is "a real possibility that injustice will result."[131] Removal is not warranted simply because an arbitrator has a "fully known relationship" with one of the parties. [132] Instead a court should only remove an arbitrator where there is evidence of: (1) dishonesty, (2) overt acts of misconduct, and (3) "an arbitrator's failure to 'faithfully and fairly hear and examine the matters in controversy' by revealing 'evident partiality or corruption.'"[133] "Evident partiality," however, is only sufficient for removal under New York law when *neutral* arbitrators are required in the applicable arbitration agreement.[134] Otherwise, a disqualification claim must be "based on

---

[128] *Astoria Med. Grp. v. Health Ins. Plan of Greater New York*, 182 N.E.2d 85, 87 (N.Y. 1962) (quoting Second Preliminary Report of Advisory Committee on Practice and Procedure (N.Y. Legis. Doc., 1958, No. 13) p. 146) (internal quotation marks omitted).

[129] *Id.* at 88 (quoting *Matter of Lipschutz (Gurwirth)*, 106 N.E.2d 8, 11 (N.Y. 1952)).

[130] *Rabinowitz v. Olewski*, 473 N.Y.S.2d 232, 234 (N.Y. App. Div. 1984).

[131] *Matter of Siegel (Lewis)*, 358 N.E.2d 484, 487 (N.Y. 1976).

[132] *Id.* at 486.

[133] *Matter of Excelsior 57th Corp. (Kern)*, 630 N.Y.S.2d 492, 495 (N.Y. App. Div. 1995).

[134] *Patrolmen's Benevolent Ass'n v. New York State Pub. Employment Relations Bd.*, 110 N.Y.S.3d 81, 89

something overt, some misconduct on the part of an arbitrator, and not simply on his or her interest in the subject matter of the controversy or the arbitrator's relationship to the party who selected him or her."[135]

Here, the arbitration agreement states:

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.[136]

The arbitration agreement at issue contains no requirement for a neutral arbitrator. Accordingly, "evident partiality" alone is insufficient to remove Mr. Howarth.

Defendants fail to allege facts of dishonesty or overt acts of misconduct by Mr. Howarth such that removal would be appropriate under New York law. Defendants urge this Court to adopt the holding in *Excelsior*,[137] in which the Supreme Court of New York held that an arbitrator, who had made comments on a previous arbitration, should be disqualified.[138] However, *Excelsior* is distinguishable from the instant case for two reasons. First, the arbitration agreement at issue in *Excelsior* required an impartial arbitrator whereas the provision in the instant case has no such requirement.[139]

Second, the arbitrator in *Excelsior* made comments, prior to the arbitration at issue, about

---

(N.Y. App. Div. 2019) (referencing the enactment of CPLR 7511(b)(1)(ii)) (emphasis added).

[135] *Id.*

[136] Rec. Doc. 17 at 3.

[137] Rec. Doc. 21 at 3.

[138] *Excelsior*, 630 N.Y.S.2d at 495.

[139] *Id.* at 492; Rec. Doc. 17 at 3.

previous arbitration concerning the parties, leading the court to believe that he would be unable to "participate in the arbitration process in a fair, honest, and good-faith manner."[140] By contrast, Defendants have provided no evidence to show that Mr. Howarth is unable to be a fair arbitrator. Defendants provide no evidence of any overt misconduct or dishonesty by Mr. Howarth but instead allege partiality based solely on Mr. Howarth's status as a testifying, expert witness.[141] This argument fails. As to testifying, New York courts have previously determined that "the giving of testimony by an arbitrator" does not constitute misconduct.[142] Moreover, Mr. Howarth's status as an expert is similarly non-disqualifying but instead could be a source of "assistance to the neutral member, who is not in a position to appreciate the problem and the fine points of its setting."[143] Because Defendants have failed to provide information supporting removal of Clean Pro's arbitrator, this Court will deny Defendants motion to remove Mr. Howarth.

## C.   *Whether the Court Should Enforce the "Terms" of the Arbitration Provision*

The FAA requires federal courts to "respect and enforce agreements to arbitrate."[144] This includes enforcing provisions among parties who "agree to limit the issues they choose to arbitrate," "agree on rules under which any arbitration will proceed," or "specify with whom they choose to arbitrate their disputes."[145] A court's role includes deciding whether a valid arbitration provisions exists, who is bound by such a provision, and what issues are to be decided in

---

[140] *Excelsior*, 630 N.Y.S.2d at 492, 495.

[141] Rec. Doc. 11-3 at 7; Rec. Doc. 21 at 3.

[142] *Meehan v. Nassau Cmty. Coll.*, 676 N.Y.S.2d 178 (N.Y. App. Div. 1998).

[143] *Patrolmen's Benevolent Ass'n*, 110 N.Y.S.3d at 88.

[144] *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

[145] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010).

arbitration.[146]

However, this involvement by a court is "limited" and ends when a decision is made over "whether the parties agreed to submit the subject matter of the grievance to arbitration."[147] Once parties agree to arbitrate, they "implicitly authorize *the arbitrator* to adopt such procedures as are necessary to give effect to the parties' agreement."[148] Questions surrounding procedural issues are "presumptively not for the judge, but for an arbitrator, to decide."[149] The only exception to this rule under which courts may involve themselves with questions of procedure is when a claim "should operate to bar arbitration altogether."[150]

Here, Defendants ask this Court to enforce the terms of the arbitration provision at issue, including the requirements for the makeup of the arbitration panel, the seat of the arbitration panel, the law used by the arbitration panel, and the permissible damages.[151] These matters are procedural and best left to the arbitration panel itself. Because a finding on any of these terms would not operate to bar arbitration altogether, the Court has no role in enforcing these procedural requirements.

## V. Conclusion

The Court grants the motion in part to the extent Defendants request that the Court compel Clean Pro to arbitrate its claims against all Defendants, including CJW, and stay the matter

---

[146] *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 547 (1964).

[147] *Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distribution, Inc.*, 331 F.3d 485, 487 (5th Cir. 2003).

[148] *Stolt-Nielsen*, 559 U.S. at 684–85 (emphasis added).

[149] *Id.* at 685 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

[150] *Id.* at 488 (citing *John Wiley*, 376 U.S. at 557–58).

[151] Rec. Doc. 11-3 at 8.

pending arbitration. The Court denies the motion in part to the extent Defendants request disqualification of Clean Pro's appointed arbitrator and to the extent Defendants request that the Court issue an order enforcing procedural requirements of the arbitration provision.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Stay and Compel Arbitration"[152] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it requests that the Court compel Clean Pro to arbitrate its claims against Defendants Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company, United Specialty Insurance Company, Safety Specialty Insurance Company, Old Republic Union Insurance Company, and Cramer, Johnson, Wiggins and Associates, Inc. The motion is **DENIED** to the extent that it seeks the disqualification of Clean Pro's administrator, Mr. Howarth, and to the extent Defendants request that the Court issue an order enforcing procedural requirements of the arbitration provision.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendants Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company, United Specialty Insurance Company, Safety Specialty Insurance Company, Old Republic Union Insurance Company, and Cramer, Johnson, Wiggins and Associates, Inc. are **STAYED** pending arbitration.

**NEW ORLEANS, LOUISIANA**, this ___18th___ day of February, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[152] Rec. Doc. 11.