UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLEAN PRO CARPET & UPHOLSTERY CARE, INC., ET AL. | CIVIL ACTION |
| VERSUS | NO. 20-1550 |
| UPPER PONTALBA OF OLD METAIRIE CONDOMINIUM ASSOCIATION, INC., ET AL. | SECTION: "G" |

## ORDER AND REASONS

In this litigation, Plaintiffs Clean Pro Carpet & Upholstery Care, Inc. ("Clean Pro") and Southern Cat, Inc. ("Southern Cat") (collectively, "Plaintiffs") allege that they contracted with the Upper Pontalba of Old Metairie Condominium Association, Inc. ("UPCA") to fix condominium buildings destroyed in a fire.[1] Plaintiffs claim that under the terms of the contract, UPCA assigned to Clean Pro insurance proceeds UPCA received from its insurers, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company, United Specialty Insurance Company, Safety Specialty Insurance Company, and Old Republic Union Insurance Company (collectively, "Insurance Company Defendants").[2] Plaintiffs assert that, despite completing the work, they did not receive payment under the terms of the contract from UPCA or from Insurance Company Defendants.[3]

Plaintiffs brought claims against UPCA, Insurance Company Defendants, and the Third-

---

[1] Rec. Doc. 1-4; Rec. Doc. 9.

[2] Rec. Doc. 9 at 9.

[3] *Id.* at 13–15.

1

Party Administrator, Cramer, Johnson, Wiggins and Associates, Inc.'s ("CJW").[4] On February 18, 2021, the Court ordered Plaintiffs to arbitrate their claims against Insurance Company Defendants and CJW, leaving Plaintiffs' claims against UPCA as the sole claims in this Court.[5] Pending before the Court is UPCA's "Motion to Stay Claims Pending Arbitration."[6] Clean Pro opposes the motion.[7] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

On February 3, 2020, Plaintiffs filed a petition in the 24th Judicial District Court for the Parish of Jefferson, naming UPCA, Insurance Company Defendants, and CJW.[8] On May 28, 2020, Insurance Company Defendants and CJW removed the case to this Court.[9] On July 9, 2020, Plaintiffs filed an amended complaint.[10]

This matter arises from the alleged destruction of over thirty (30) condominiums at the Upper Pontalba of Old Metairie Condominium buildings after a fire broke out on February 2, 2019.[11] After the fire, UPCA hired Clean Pro pursuant to a contract to provide restoration services

---

[4] Rec. Doc. 9. Plaintiffs originally named over 50 individual unit owners as defendants as well, but those claims were later dismissed with prejudice on motion of Plaintiffs. Rec. Doc. 119; Rec. Doc. 121.

[5] Rec. Doc. 116.

[6] Rec. Doc. 130.

[7] Rec. Doc. 135.

[8] Rec. Doc. 1-4. *See supra* text accompanying note 4.

[9] Rec. Doc. 1.

[10] Rec. Doc. 9.

[11] *Id.* at 8.

2

on the damaged buildings.[12] Under the contract, UPCA agreed to pay Clean Pro for its work and to assign to Clean Pro proceeds UPCA received from its insurers, Insurance Company Defendants.[13] Defendant CJW served as the Third-Party Administrator for Insurance Company Defendants, processing claims related to the fire.[14] After being hired by UPCA, Clean Pro entered into a subcontract agreement with Southern Cat.[15] Plaintiffs allege that they completed all required work under the contract and submitted invoices according to the rates set out in the contract.[16] Plaintiffs allege that UPCA has failed to pay Plaintiffs as required under the contract and that Insurance Company Defendants have refused to pay Plaintiffs for a portion of the work completed.[17]

In this suit, Plaintiffs bring claims for breach of contract against UPCA, breach of contract and breach of duty of good faith claims handling against Insurance Company Defendants, and negligence and bad faith claims handling against CJW.[18] Plaintiffs also claim that they are valid lienholders and are entitled to institute and pursue all legal remedies against UPCA, including enforcement of Plaintiffs' Statements of Claim and Privilege, for the total unpaid amount of $2,367,296.68, plus interest, costs, and attorneys' fees.[19]

On February 18, 2021, the Court ordered Plaintiffs to submit to arbitration with Insurance

---

[12] *Id.*

[13] *Id.* at 9.

[14] *Id.* at 12.

[15] *Id.*

[16] *Id.* at 12–14.

[17] *Id.* at 12–16.

[18] *Id.* at 16–21.

[19] *Id.* at 21.

Company Defendants and CJW pursuant to the arbitration provision contained in the insurance policies Insurance Company Defendants issued to UPCA, under which UPCA then assigned proceeds to Clean Pro.[20] On May 4, 2021, UPCA filed the instant motion, seeking to stay Plaintiffs' claims against UPCA pending the arbitration between Plaintiffs, Insurance Company Defendants, and CJW.[21] On March 25, 2021, Clean Pro filed an opposition.[22] On June 1, 2021, with leave of Court, UPCA filed a reply brief in further support of the motion to stay.[23]

## II. Parties' Arguments

### A.  *UPCA's Arguments in Support of the Motion to Stay*

UPCA makes several arguments in favor of a stay.[24] First, UPCA contends that a stay is mandatory under the Federal Arbitration Act ("FAA") because Plaintiffs' claims against UPCA involve the same facts as those at issue in the arbitration between Plaintiffs, Insurance Company Defendants, and CJW.[25] UPCA alleges that when deciding whether non-arbitrable claims must be stayed pending ongoing arbitration, courts apply factors set forth by the Fifth Circuit in *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*,[26] including (i) whether the same operative facts are at issue in the arbitration and the litigation, (ii) if the claims are inherently inseparable, and (iii) if litigation will affect the arbitration.[27] UPCA alleges that under these three

---

[20] Rec. Doc. 116.

[21] Rec. Doc. 130.

[22] Rec. Doc. 135.

[23] Rec. Doc. 139.

[24] Rec. Doc. 130-1.

[25] *Id.* at 3.

[26] 372 F.3d 339, 342 (5th Cir. 2004).

[27] Rec. Doc. 130-1 at 4.

4

factors, a stay is necessary because the same facts are involved in the arbitration and the instant litigation, the claims are inherently inseparable, and continuing with this matter would affect the arbitration.[28]

Second, UPCA argues that even if a stay is not mandatory, this Court should exercise its discretion to stay the claims against UPCA for purposes of judicial economy.[29] UPCA argues that a discretionary stay is warranted because of the overlap between the arbitration claims and the claims against UPCA.[30] UPCA also contends that the outcome of the arbitration may benefit the parties to this litigation.[31]

B. *Clean Pro's Arguments in Opposition to the Motion to Stay*

In opposition, Clean Pro argues that it did not agree to arbitrate its claims against UPCA.[32] Clean Pro cites the contract between UPCA and Clean Pro, which "provides that the UPCA acknowledged that it is responsible for all amounts to be paid to Clean Pro and no lack of insurance coverage or failure on the part of the UPCA to receive insurance proceeds will relieve the UPCA of this responsibility."[33] Thus, Clean Pro argues, UPCA is "contractually bound to make payment to Clean Pro regardless of the outcome in [the] arbitration."[34]

Clean Pro further contends that the FAA's mandatory stay provision does not apply to non-signatories to an arbitration agreement except in certain circumstances that do not apply to

---

[28] *Id.* at 4–5.

[29] *Id.* at 5–6.

[30] *Id.* at 6–7.

[31] *Id.*

[32] Rec. Doc. 135 at 1.

[33] *Id.* at 1–2.

[34] *Id.* at 3.

5

Plaintiffs' claims against UPCA.[35] Instead, Clean Pro argues that Plaintiffs' claims against UPCA arise from the contract between Plaintiffs and UPCA, not out of the insurance policies which contain the arbitration provision.[36] Accordingly, Clean Pro contends that "UPCA's liability to Clean Pro under the Contract does not derive from the Insurers' or CJW's conduct or liability under the policy" and UPCA is not entitled to a stay of the present litigation.[37]

Clean Pro does concede that "it would prefer to recover the amounts due to it from the Insurers," not UPCA.[38] While Clean Pro argues that this litigation should nevertheless proceed, Clean Pro asserts that it "is not opposed to extending the deadlines in this litigation so that the arbitration is resolved before a trial on merits takes place in the litigation."[39]

C.     *UPCA's Arguments in Further Support of the Motion to Stay*

UPCA argues in reply that "the FAA's mandatory stay provision can be invoked by non-signatories" to an arbitration agreement.[40] UPCA re-asserts that a stay is warranted in this case under the *Waste Management* factors, as the facts involved in arbitration and litigation are the same, the claims are inseparable, and ongoing litigation will affect the arbitration.[41] UPCA argues that it is irrelevant that Plaintiffs' claims against UPCA arise under the contract between the two parties and not the insurance policy containing the arbitration provision in this matter because Clean Pro put "both contracts at issue in both proceedings by alleging that its contract with UPCA

---

[35] *Id.*

[36] *Id.* at 3–4.

[37] *Id.* at 4.

[38] *Id.*

[39] *Id.*

[40] Rec. Doc. 139 at 2.

[41] *Id.* at 2–3.

6

assigned to Clean Pro the proceeds of any insurance coverage under UPCA's insurance contract."[42]

### III. Legal Standard & Analysis

The Federal Arbitration Act was enacted in order to "allow[] a party to . . . an arbitration agreement to petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement."[43] In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[44] The Fifth Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[45] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[46]

Under the FAA, there is a "strong federal policy in favor of enforcing arbitration agreements."[47] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .[48]

---

[42] *Id.* at 4.

[43] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (internal quotation marks omitted).

[44] 379 F.3d 159, 166 (5th Cir. 2004).

[45] *Id.*

[46] *Id.*

[47] *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

[48] 9 U.S.C. § 3.

7

"[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay."[49]

Traditionally, federal courts applied the FAA only to parties to an arbitration agreement.[50] However, Section 3 of the FAA provides parties not subject to an arbitration agreement with "the right to ask the court for a mandatory stay of litigation, in favor of pending arbitration to which they are not a party."[51] A stay of non-arbitrable claims is appropriate in very limited circumstances.[52] The Fifth Circuit instructs courts to consider three factors in determining whether to stay non-arbitrable claims: (i) whether the same operative facts are involved in the litigation and arbitration; (ii) whether the claims are inseparable; and (iii) whether allowing litigation to proceed would affect arbitration.[53] "The question is not ultimately one of weighing potential harm to the interests of the [parties not subject to arbitration], but of determining whether proceeding with litigation will destroy the . . . right to a meaningful arbitration."[54]

Applying these factors, the Court determines that a stay of Plaintiffs' claims against UPCA is warranted pending the ongoing arbitration between Plaintiffs, Insurance Company Defendants, and CJW. Under the first *Waste Management* factor, Plaintiffs' claims against UPCA, Insurance Company Defendants, and CJW all arise out of the same event—the fire that

---

[49] *Texaco Expl. & Prod. Co.*, 243 F.3d at 909 (citing *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

[50] *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001); *see also Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989).

[51] *Waste Mgmt.*, 372 F.3d at 342.

[52] *Id.*

[53] *Id.* at 343–45; *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002).

[54] *Waste Mgmt.*, 372 F.3d at 343.

destroyed over thirty condominiums at the Upper Pontalba of Old Metairie Condominium buildings—and were originally brought by Plaintiffs in one lawsuit.[55] Plaintiffs claim that they were not properly compensated for the work they performed after the fire. Defendants dispute "the amount and quality of work the Plaintiffs allegedly performed, the accuracy of their invoices, and the reasonableness of their charges."[56] Therefore, the same operative facts are involved in this litigation and in the arbitration.

As to the second *Waste Management* factor, Plaintiffs claims against Insurance Company Defendants and UPCA are inseparable. Insurance Company Defendants issued insurance policies to UPCA. After UPCA entered a contract with Plaintiffs to perform fire remediation, UPCA "irrevocably assigned to Clean Pro that portion of the proceeds of any insurance coverage which relates to the work performed by Clean Pro."[57] Therefore, Plaintiffs' claims against Insurance Company Defendants are contingent upon a finding that UPCA owes Plaintiffs money for the work Plaintiffs allegedly performed. Plaintiffs suffered "one alleged harm, so the resulting litigation and arbitration are inherently inseparable from the instant litigation."[58]

Finally, continuing with the instant litigation against UPCA could substantially impact the ongoing arbitration. Permitting the instant suit to proceed against UPCA "would undermine the arbitration proceedings" between Plaintiffs and Insurance Company Defendants, "thereby thwarting the federal policy in favor of arbitration."[59] Moreover, were a judgment issued in this

---

[55] *See generally* Rec. Doc. 9.

[56] Rec. Doc. 130-1 at 4.

[57] Rec. Doc. 9 at 17.

[58] *Waste Mgmt.*, 372 F.3d at 345.

[59] *Hill*, 282 F.3d at 348.

9

case, "[g]iven the binding effect of a federal judgment, as well as the factual similarities in [the] asserted claims, the . . . arbitrator would necessarily be strongly influenced to follow the court's determination."[60] Therefore, the third *Waste Management* factor also weighs in favor of staying the instant litigation.

Given that all three *Waste Management* factors support a stay, the Court will stay Plaintiffs' claims against UPCA pending the ongoing arbitration between Plaintiffs, Insurance Company Defendants, and CJW.

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that UPCA's "Motion to Stay Claims Pending Arbitration"[61] is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned matter is **STAYED** and **ADMINISTRATIVELY CLOSED** to be reopened upon motion of a party at the conclusion of the arbitration proceedings.

**NEW ORLEANS, LOUISIANA,** this __14th__ day of July, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[60] *Id.*

[61] Rec. Doc. 130.