UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLEAN PRO CARPET & UPHOLSTERY, INC., ET AL. | *   CIVIL ACTION NO. 20-1550 <br> * <br> *   SECTION: "L"(1) |
| VERSUS | * <br> *   JUDGE ELDON E. FALLON |
| UPPER PONTALBA OF OLD METAIRIE CONDOMINIUM ASSOCIATION, INC., ET AL. | * <br> *   MAGISTRATE JUDGE <br> *   JANIS VAN MEERVELD |
| ************************************ | * |

ORDER AND REASONS

Before the Court is the motion of plaintiff Clean Pro Carpet & Upholstery, Inc., for an award of attorneys' fees and costs against defendant Certain Underwriters at Lloyd's London for its failure to execute a waiver of formal service. (Rec. Doc. 148). The court finds that Clean Pro acted unreasonably in failing to request that it be reimbursed the $64.59 it spent on service prior to spending thousands of dollars on a motion. It is therefore not entitled to the reasonable expenses and fees associated with filing the motion ordinarily awarded under the applicable Federal Rule of Civil Procedure. As such, Lloyd's shall pay Clean Pro $64.59 in expenses for service.

Background

This lawsuit arises out of a February 2, 2019, fire at the Upper Pontalba of Old Metairie Condominium buildings ("Upper Pontalba") that damaged or destroyed over 30 condo units and common areas within the building. The Upper Pontalba Condominium Association ("UPCA") contracted with Clean Pro to provide labor, equipment, and materials for fire mitigation services. UPCA made a claim against the Insurers for coverage. Clean Pro invoiced UPCA for approximately $6 million of which UPCA has paid approximately $3.8 million.

Clean Pro and its subcontractor Southern CAT, Inc. initiated this action in state court against UPCA, a number of UPCA's insurers, the third party claims administrator hired by the

1

insurers to process the claims, and the individual owners of the condominiums who were each alleged to have an interest in the common elements of the Upper Pontalba of Old Metairie Condominiums. The insurer defendants removed to this court on May 28, 2020. Plaintiffs amended their complaint about a month later and named two additional insurers, one of which is Certain Underwriters at Lloyd's London. On motion of the originally named insurers and the claims handler, the court ordered Clean Pro to arbitrate its claim against them on February 18, 2021. The next day, the court issued an order noting that the record did not reflect service upon certain defendants—including Lloyd's—and requiring plaintiffs to show cause why their claims against those defendants should not be dismissed for failure to prosecute. Over the next month, plaintiffs' claims against the owners of the condominiums were dismissed by the plaintiffs. On March 16, 2021, plaintiffs reported to the court that they had spoken with counsel for Lloyd's and the other unserved insurer, who requested Waivers of Service be sent to her for transmission to these parties. They further reported that they had sent the waivers (apparently via email to the insurers' counsel in the arbitration) but that the waivers had not yet been returned. Email correspondence shows that counsel for Clean Pro followed up with counsel for Lloyd's[1] in the arbitration on March 19, March 31, and May 7, 2021. In each case, Lloyd's counsel responded that she had not heard back.

Meanwhile, UPCA moved to stay the claims against it pending the arbitration between Clean Pro, the insurers, and the insurance claims handler. On July 14, 2021, the court granted the motion, staying and administratively closing the case.

On August 19, 2021, Clean Pro filed a motion to partially lift the stay to allow it to request issuance of a summons to Lloyd's, to file proof of service, and to seek expenses incurred in making

---

[1] The service saga includes defendant International Insurance Company of Hannover SE, but the court does not include reference to efforts to serve Hannover because Clean Pro does not seek to recover costs as to service of this defendant. It is undisputed that Hannover is not located in the United States.

service in accordance with Federal Rule of Civil Procedure 4(d)(2). The court granted the motion on October 22, 2021, and on October 27, 2021, Clean Pro served Lloyd's with the Summons in New York, New York at the address provided in the Service of Suit clause of its policy. Clean Pro filed a motion to recover its costs and for attorneys' fees in preparing the motion on December 15, 2021. Lloyd's took the deposition of Clean Pro's counsel, who had signed a sworn declaration in support of Clean Pro's motion. Clean Pro supplemented its request for attorneys' fees to include the time spent defending and participating in the deposition. On March 29, 2022, the motion was referred to the undersigned for decision.

Clean Pro submits that it is entitled to $3,234.59, which includes $64.59 in costs for copying and FedEx charges. The remainder is made up of attorneys' fees for review of the order granting the motion to reopen the case; review and preparation of the summons and complaint to be served; review and analysis of "issues concerning receipt of Summons" and preparation of declaration regarding same; review and analysis of standards for obtaining attorneys' fees; preparation and filing of the motion, memorandum in support, and notion of submission; sitting for deposition regarding the declaration; and defending the deposition. Attorney G. Andrew Veazey charges a rate of $300 per hour and attorney Steven J. Pudell (whose sole task was to the defend the deposition of Veazey) charges a rate of $650 per hour.

Lloyd's opposes the motion. It insists that it is not "located in the United States," and that therefore the fee recovery provisions of Rule 4(d)(2) do not apply. Moreover, it argues that there is no good cause to award attorneys' fees because Lloyd's did not "refuse" to sign the waiver. Its counsel reports that she simply did not receive a response to the request. Lloyd's adds that its counsel notified Clean Pro's former counsel that it would stipulate to participate in the arbitration. Lloyd's submits this obviates the needs for service. Lloyd's further complains that Clean Pro never

made a demand for the mere $64.59 that it spent to execute service. Lloyd's argues that it was an extreme waste of judicial resources for Clean Pro to prepare the motion at issue. Further, even if fees are awarded, Lloyd's argues that Clean Pro's fees are not reasonable and include tasks that could easily have been performed by a paralegal. Further, Lloyd's argues that the issue in the motion is not complex and should not have involved 4.7 hours to prepare.

Clean Pro responds that Lloyd's is located in the United States because pursuant to the policy, service is to be effectuated on its agent in the United States. It adds that some of the syndicates that comprise Lloyd's are located in the United States. Clean Pro further argues that informing Clean Pro's former counsel that Lloyd's would participate in the arbitration does not satisfy the service requirement. It points out that the court ordered it to demonstrate service on pain of dismissal of its claims against Lloyd's. Finally, Clean Pro argues that Lloyd's failure to respond to the request for service for a period of six months amounts to a refusal to sign the waiver.

<u>Law and Analysis</u>

1. *Fees for Service of Process*

Parties are encouraged to waive service to avoid the unnecessary expenses of serving the summons. Fed. R. Civ. P. 4(d)(1). Thus, the Federal Rules of Civil Procedure provide that a plaintiff may notify a defendant of the pending action and request that the defendant waive service of a summons. <u>Id.</u> The Rule requires that the notice and request must:

> (A) be in writing and be addressed:
>     (i) to the individual defendant; or
>     (ii) for a defendant subject to service under Rule 4(h), to an officer, a
>     managing or general agent, or any other agent authorized by appointment
>     or by law to receive service of process;
> (B) name the court where the complaint was filed;
> (C) be accompanied by a copy of the complaint, 2 copies of the waiver form
> appended to this Rule 4, and a prepaid means for returning the form;
> (D) inform the defendant, using the form appended to this Rule 4, of the
> consequences of waiving and not waiving service;

(E) state the date when the request is sent;
(F) give the defendant a reasonable time of at least 30 days after the request was sent--or at least 60 days if sent to the defendant outside any judicial district of the United States--to return the waiver; and
(G) be sent by first-class mail or other reliable means.

Id. A defendant "located within the United States" that fails to waive service without good cause must pay not only the expenses incurred in making service but also the reasonable expenses—including attorney's fees—"of any motion required to collect those service expenses." Id. R. 4(d)(2). With respect to foreign defendants, the Advisory Committee comments to the Rule note that there are no adverse consequences of failing to waive service and that a foreign defendant is not required to demonstrate "good cause" for its failure to waive service. Id. Advisory Committee Comments to the 1993 Amendment; Campinha-Bacote v. Hudson, 627 F. App'x 508, 510 (6th Cir. 2015) ("[T]hough Federal Rule of Civil Procedure 4(d)(2) requires defendants who refuse to waive service to pay the expenses associated with serving a recalcitrant party, the rule applies only to defendants located in the United States."). The comments further explain that:

> With respect to a defendant located in a foreign country like the United Kingdom, which accepts documents in English, whose Central Authority acts promptly in effecting service, and whose policies discourage its residents from waiving formal service, there will be little reason for a plaintiff to send the notice and request under subdivision (d) rather than use convention methods.

Fed. R. Civ. P. 4 Advisory Committee Comments to the 1993 Amendment.

2. *Is Lloyd's Located in the United States?*

The threshold question in this dispute is whether Lloyd's is located in the United States.[2] Lloyd's says it is located in the United Kingdom. But Lloyd's is not an entity. The defendant here is described as "Certain Underwriters' at Lloyd's," which is comprised of 26 syndicates. See

---

[2] It is not clear that all of the requirements for providing notice of suit and requesting a waiver under Rule 4(d)(1) have been met, but Lloyd's does not object to the imposition of fees on this basis. Any such arguments are, therefore, waived.

Lloyd's Corp. Discl. St., Rec. Doc. 160-3. Each syndicate is itself composed of one or more underwriters, sometimes referred to as "Names" or "members." See Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1083 (11th Cir. 2010); Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 858 (5th Cir. 2003). A managing agent appointed by the syndicate is responsible for underwriting and management of each Name's investments. Corfield, 355 F.3d at 858. Here, four of the syndicates have managing agents with ultimate parent corporations that are incorporated in the United States.

Rule 4 provides no guidance on what "located in the United States" means. When considering whether diversity jurisdiction has been established, courts in this district have required that the citizenship of all Names subscribing to the policy be diverse. E.g., Louisiana Rest. Ass'n, Inc. v. Certain Underwriters at Lloyds, London, No. CV 21-1718, 2021 WL 5492794, at *6 (E.D. La. Nov. 23, 2021); Certain Underwriters at Lloyd's London Subscribing to Pol'y No. B066421355A04 v. Washington, No. CIV.A 09-3195, 2009 WL 5215927, at *4 (E.D. La. Dec. 28, 2009); see Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1088–89 (11th Cir. 2010); Those Certain Underwriters at Lloyd's London v. Sophisticated Invs. Inc., No. 2:20-CV-3592-KSM, 2022 WL 507437, at *3 (E.D. Pa. Feb. 18, 2022). Extending that rationale to Rule 4, Lloyd's is located in the United States by virtue of the location of Names managing four of the syndicates underwriting the policy at issue. The fact that the policy itself provides for service on a representative in the United States offers further support for concluding that the defendant "Lloyd's" is located in the United States.

The only support for finding that Lloyd's is located in the United Kingdom is Lloyd's statement in its opposition memorandum, unsupported by any evidence, that it is located there.

6

Under the circumstances, the court concludes that for purposes of Rule 4(d)(2), Lloyd's is located in the United States.

3. *Did Lloyd's Have Good Cause for Failing to Waive Service?*

The court notes that despite the parties' focus on whether or not Lloyd's "refused" to waive service, that is simply not the standard. What matters is whether Lloyd's failed to waive service. On that point, there is no dispute. Clean Pro requested repeatedly that Lloyd's waive service. Months later, it had failed to do so.

Good cause under Rule 4(d)(2) is a high standard to meet. The comments to the Rule note that "sufficient cause should be rare" and suggests that good cause would exist where "the defendant did not receive the request or was insufficiently literate in English to understand it." Fed. R. Civ. P. 4 Advisory Committee Comments to 1993 Amendment. No such thing is alleged here.

Lloyd's says it had good cause because it believed it was not required as a result of agreeing to participate in the arbitration. This is belied by the court's order demanding evidence of service and Clean Pro's repeated requests that Lloyd's waive service. Moreover, Lloyd's counsel did not respond to these requests by arguing that service was not necessary. She apparently passed the request on to her client, who could not be bothered to respond.

The court finds that Lloyd's did not have good cause for its failure to waive service.

4. *Reasonableness of the Attorneys' Fees*

Lloyd's argues that Clean Pro's decision to spend over $2,000 to file a motion to collect $65 in expenses was a waste of judicial resources. The court agrees. The Rules authorize the collection of fees and expenses as a way to encourage defendants to waive service and thereby eliminate unnecessary expenses incurred to effect service. Here, though, Clean Pro's pursuit of

7

thousands of dollars of fees when it cost a mere $65 to effect service reeks of an abusive litigation tactic. However, no one has clean hands in this story and the court is tempted to sanction the attorneys on both sides pursuant to 28 U.S.C. § 1927 for unreasonably multiplying the proceedings, because not to be outdone, after receiving Clean Pro's motion, Lloyd's then took a turn at losing all sense of proportion. After failing to take the minimal step of signing the service waiver or authorizing its attorney to do so, Lloyd's doubled down and decided to notice a deposition to traverse Clean Pro's attorney on his declaration. Not once—even in cases where hundreds of thousands of dollars of attorneys' fees are at stake—has this court encountered a party noticing an attorney's deposition to question him on the reasonableness of his fees. And Lloyd's did so at its own peril—it must have known that the additional, reasonable attorneys' fees incurred could be recoverable. Indeed, so extreme is Lloyd's conduct in taking a deposition to traverse the declarant that it is tempting to award such fees to Clean Pro.

Ultimately, however, the court must find that Clean Pro should bear the cost of this foolish endeavor. Critically, Clean Pro did not even attempt to resolve the fee dispute amicably first, before investing in an expensive motion that triggered this flurry of pleadings and a deposition. And while Rule 4(d)(2) does not explicitly require the plaintiff to make a demand for fees prior to filing a motion, it does seem to contemplate it: "the court must impose on the defendant . . . the reasonable expenses, including attorney's fees, of *any motion required* to collect those service expenses." Fed. R. Civ. P. 4(d)(2). If expenses to incur service are paid on demand, no motion would be required. When the attorneys' fees associated with the effort to collect may dwarf the actual expense of service, expecting a plaintiff to make some effort to obtain payment before seeking court intervention is consistent with Rule 1, which instructs the court and the parties to

interpret the rules to "secure the just, speedy, *and inexpensive* determination of every action and proceeding." (emphasis added.) Clean Pro failed miserably to do so here.

## Conclusion

The court has found that Lloyd's is located in the United States for purposes of Rule 4(d)(2) and that it has not shown good cause for its failure to waive service. Therefore, Clean Pro is entitled to the expenses of effecting service.  However, for its failure to make amicable demand for this amount prior to investing in a motion that cost thousands, all to recoup an investment of just $64.59, it shall not be awarded reasonable attorneys' fees for filing the motion to recover such expenses.[3] The court finds that Lloyd's must pay Clean Pro $64.59.  All parties are reminded that

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

New Orleans, Louisiana, this  29th  day of April, 2022.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge

---

[3] The court further notes the attorneys' fees incurred were excessive, included attorney time on administrative tasks, and at least one rate would have been radically reduced as insupportable in this market.

9